Good afternoon, Your Honors. May it please the Court, my name is Jennifer Hayes from Nixon Peabody. I represent Mr. Orellana. With me today is Matthew Richards, also from Nixon Peabody. And thank you for your pro bono representation. Thank you, Your Honors. I'd like to reserve two minutes of rebuttal time. Apart from the failure of the immigration judge to secure a knowing, intelligent waiver, there are two important legal issues raised by Mr. Orellana's case that the Court should address today. The first is that the agency's regulations that appeal waivers are final are inconsistent with the Immigration and Nationality Act. The second is that an unrepresented immigrant's A file should be ordered to produce during proceedings where there are factual disputes warranting admission of the A file consistent with the Court's holding in Dent v. Holder. Turning first to the appeal waiver issue, the agency has two regulations that relate to the finality of appeal waivers. The first is that a notice of appeal cannot be filed if there has been an appeal waiver, and the second is that appeal waivers are final. This amounts to an agency's scope of authority as granted by Congress. The reason this issue should be decided in this case is that there needs to be clarity on this issue. This was highlighted in the amicus brief that was submitted in this case, and it is also highlighted by various decisions that the Court has reached in the two Rule 28 submissions that we presented to the Court. The agency's appeal waiver system results in unrepresented immigrants losing all legal rights with no recourse. This Court has characterized these legal rights as being fundamental rights. The Court has ---- Breyer, if we agree with you, where does that leave us in this case? It leaves ---- What do you want to ---- what remedy are you seeking, assuming that the appeal waiver is invalid either because it wasn't going involuntary or because it's not permitted under the statute? So we would request that the Court invalidate the regulations and remand the case to the Board of Immigration Appeals so that it can remand the case to the immigration judge, so that it can hold a hearing where it can have Mr. Oriana have a proper hearing on his removal proceedings. So what do we do with the alternative holding by the BIA that said, assuming jurisdiction, there's nothing here? So I think we have to look at the Board's decision carefully, and it's clear that they that Mr. Oriana did not meet his burden. But then, second, the Board's decision with respect to the advisory opinion that he didn't meet his burden of showing relief from removability is that there are a number of due process violations that were not corrected by the Board as raised in our briefing. This included the failure to advise Mr. Oriana of all of the avenues of relief available to him, including cancellation of removal and adjustment of status. It also — there's also the due process violation with respect to Mr. Oriana's fundamental misunderstanding of the purpose of the proceedings, which was — which was used to secure the so-called stipulated removal order of Mr. Oriana. And there are the issues in the record relating to the factual inconsistencies that could have been resolved by the A-file. So there are a number of due process violations that still exist in this case. And under the Board's decision where it disclaimed jurisdiction, none of those can be addressed. Well, I suppose it can disclaim jurisdiction, but it made an alternative finding. And I guess the second question is, how do you deal with the exhaustion requirement? And none of those items that you just listed were exhausted administratively. So how do we have jurisdiction to reach that? So I think there is jurisdiction over the waiver issue because this Court has found that even where unrepresented immigrants haven't specifically challenged the waiver, the Court has gone back and reviewed the record to determine whether the waiver was sufficient and found that unrepresented immigrants do not need to specifically challenge the waiver. With respect to the other due process violations, an argument can be made that it would be futile because the Board disclaimed jurisdiction. However, I think that even Mr. Oriana's letter appeal to the Board included additional facts that would support the cancellation of removal relief, which was not addressed by the immigration judge. And so an argument can also be made that he did raise sufficiently, based on this Court's precedent, the general contention that there were issues in terms of properly advising Mr. Oriana about all of the avenues of relief. Okay. And the third exhaustion argument is that with respect to the A file, Mr. Oriana raised factual disputes at the hearing. Within the hearing, he challenged the government's attorney's statement that he had been removed twice, as well as the issue relating to his legal permanence permanent residency status. And so those were issues that he had raised down below. And when the Board of Immigration Appeals reviewed the record, they were put on notice of these factual disputes. So we believe that Mr. Oriana sufficiently exhausted the due process violations that he we have raised in the appeal briefing. Continuing with the appeal waiver issue, there are serious consequences to the agency's appeal waiver as final holdings. The — because it exceeds the authority that Congress granted under the Immigration and Naturalization Act. The Act itself only provides two circumstances in which an order becomes final. The first is the affirmance by the Board, and the second is the expiration of the time period. The appeal waiver regulations don't fall into either of those categories, and for that reason, the agency has exceeded its authority. Furthermore, in Ocampo v. Holder, this Court held that the finality statute is clear. And unambiguous, such that a removal order only becomes final in those two circumstances. And so if the Court follows its previous precedent in the Ocampo v. Holder case, then the government's position should be rejected with respect to the appeal waiver system. Moving on to the A file issue, in Dent v. Holder, the Court held that individuals whose immigration removal proceedings should be provided with their A files. In that case, the Court explained that the Act's Mandatory Access Law entitles immigrants in removal proceedings to any records and documents not considered to be confidential that pertain to the alien's admission or presence in the United States and acknowledge due process violations if the A files were not provided. In that case, the Court held short of saying that the A files need to be produced in cases where an immigrant has not asked for the A file. Here, Mr. Orellana did not ask for his A file to be produced, but he did raise factual disputes in his underlying hearing that would mandate the production of the A file. And as the Court recognized in Dent v. Holder, they can't imagine a good reason why you would not produce an A file in situations such as this. And so for that reason, based on the same reasoning that the Court held, that A files should be produced when an immigrant specifically asks for the production of the A file, we believe that the A file should also be produced in this circumstance. Roberts. Thank you, counsel. Orellana. Thank you, Your Honor. I'll reserve my remaining time for rebuttal. Good afternoon, Your Honors. May it please the Court, Stephanie Hennis for Respondent. This Court did not address the validity of the appeal waiver regulation in order to dispose of this petition for review. Instead, the Court should deny the petition based on the fact that the Court alternatively considered the merits of the issues raised in the Petitioner's appeal and determined on the merits that the appeal should be dismissed. The Board committed no error when it concluded that the appeal should be dismissed based on the merits, because the Petitioner never raised any challenge to any type of issues during his removal proceedings, and the factual claims that he made in the letter supporting his appeal did not even allege prima facie eligibility for any type of relief from removal. And as the Board pointed out to the Court, the Petitioner was never advised of those potential avenues, correct? He was advised during his first master calendar in front of the immigration judge. He was given a thorough explanation of the types of ---- Well, it was a listing. I don't think anybody explained cancellation of removal to him in those specific terms, did they? No. No one did explain cancellation in specific terms. However, in this case, the immigration judge at the second master calendar hearing did undertake a several-page questioning of the Petitioner to try to elicit whether he might be eligible for various types of relief. After ---- And do you know whether he's used or that his parents were United States citizens or not? He said so on the record. Is that all we have? He did say on the record that his ---- Was the government ever able to ascertain whether he had, in fact, been a lawful permanent resident? Based on this record, it ---- the ---- based on this record, it appears that he was previously a lawful permanent resident. However, he conceded during his removal proceedings that he had been removed, and he also conceded that he had illegally reentered the country, which was what was used to support the charge of removal in this case. Additionally, getting back to his ---- the appeal that he filed to the board, he never ---- he never alleged in that that he was a lawful permanent resident. He never ---- No. He was proceeding pro se and writing a letter after these proceedings. Is he still detained? He is not still detained. He was ---- he was released in 2016 after he had a Rodriguez bond hearing. So what ---- why don't you address the appeal waiver issue, if you don't mind? Sure, Your Honor. The ---- the appeal waiver issue in the context of the way that it functions. The regulatory issue and also the knowing and voluntary. Okay. So the government's position in this case is that the board's decision should be read as indicating that there was no challenge to the knowing and voluntary ---- knowing, intelligent, and voluntary aspects of the appeal. Do you think you can waive a challenge that your waiver was not voluntary and knowing? Okay. In other words, somebody comes and says, I ---- yeah, I ---- I executed this waiver, but my waiver was not voluntary or knowing. Do you think you can waive a challenge to that? Can you ---- well, he didn't ---- he didn't bring that challenge. The board is ---- Oh, but your argument here, as I understand it, is that when he had executed his appeal waiver, he was also ---- he was also waiving his challenge to assert that his waiver was not voluntary. In his ---- yes, that is our position in this case, that in his appeal here, he did ---- he did not bring that challenge. That ---- I'm sorry. A separate question. The board held that it did not have jurisdiction because of the appeal waiver. Would you agree that jurisdiction and waiver of appeal are two separate concepts? It ---- that is ---- that is basically what we argued in our brief. The footnote that we have at the end of our brief explains how looking ---- especially looking at the board's decision in this case, because it did reach this alternative conclusion on the merits, that it wasn't ---- while it did present its paragraph, its second-to-last paragraph as one dealing with jurisdiction, it was really focused on the ---- this should be interpreted as a claims processing rule, not an actual jurisdictional. So the board erred, you would concede, in saying it lacked jurisdiction? I would say that the board's use of the word jurisdiction was perhaps ill ---- When it said it had no jurisdiction, what do you think it meant? I think it ---- what I think happened in this case, and this is what was presented in our brief, is that the board recognized that there wasn't any challenge being the waiver in this case, but perhaps because it might have felt that there were concerns about the knowing involuntary aspect of it, still then went on to address the merits of the appeal, which is ---- I'm not sure I quite understand the concept here, because to provide a different context, for example, in the criminal context, when a defendant enters a plea and that doesn't mean that we lose jurisdiction as an appellate court. We take up the case, and if we find the appeal waiver valid, then we dispose of it that way. But it does not deprive us of jurisdiction. And it seems to me what the board said is that an appeal waiver deprived it of jurisdiction, which seems to me plainly wrong. But the ---- When it said it lacked jurisdiction, it didn't say we're going to enforce the appeal waiver. It said we lacked jurisdiction. I mean, so in this case, if the Court believes that there wasn't actually an appeal waiver or it doesn't believe that that's something that could be properly ---- can't be properly conveyed in this context, then this Court's precedent does say that if this Court interprets the decision, the board's decision, as actually reaching whether there was a knowing and intelligent appeal, waiver of appeal, that this Court then can address the merits of it. However, this is ---- And if we address the merits of it, there's nothing in the record that indicates that the I.J. actually advised him that he had a right of appeal and that he said, I waive that right, correct? No. I don't see that in the record in this case, Your Honor. However, if that's the ---- if that's the concern that the Court has, what this all gets back to is whether the Petitioner was deprived of his ability to file an appeal and have his appeal considered. And in this case, his appeal was, in fact, considered based on what he presented  Would you agree with me that the board itself lacks the ability to declare a regulation in conflict with the statute? I believe that is our ---- that is our position, yes. Yes. And so that issue is not waived as can be presented here today. And what's the government's position on that issue? The ---- Go ahead. The government's position, well, initially, is that the Court doesn't need to reach that in this case. However, as to the merits, the government's position is that the appeal ---- the appeal waiver regulation is not ---- is still in line with the statute because it's a ---- it's a reasonable interpretation of the second part of 11 ---- 1101A47B, which talks about the expiration of the period in which the alien is permitted to seek review of the ---- of the order entered by the immigration judge. The ---- as we laid out in our brief, the statute is silent as to the ---- the alien's ability to waive the right to an appeal and that this ---- it is an ---- a permissible interpretation of the statute to say that that appeal period could be waived. The benefits there are that ---- The difference is, though, there's a difference between the waiver of appeal and administrative finality. Wouldn't you agree? I'm sorry. Well, just because you waive your appeal doesn't necessarily mean that it is administratively expired, correct? That's true. I mean, the Board has issued precedent decisions saying that even when somebody has waived an appeal, there are still ways that they can go about having that appeal waiver considered, either by the Board or in the context of a motion to reconsider, having that considered by the immigration judge as well. So the simple fact that someone has waived appeal does not necessarily terminate all ability to have the case continue to be considered. Thank you, counsel. Thank you, Your Honor. The government raised the issue about the expiration of time period language in the finality definition within the Act. And there was a significant amount of briefing on the statutory construction issue in both parties' briefing. And I think here it should be clarified that the expiration of time period needs to have some meaning, and that meaning can't be instantaneous waiver of all appeal rights is final. The time period needs to be some length of time that needs to pass and then expire. And then with respect to the distinction between waiver of appeal and finality, the Board did independently review the record and find that Mr. Oriana waived his appeal rights. But if you look at the record, all that Mr. Oriana was asked was whether his removal order was final. He was never expressly asked whether he waived his appeal. And so the Board of Appeals independently found that he had waived his appeal rights, even though he never actually did waive his appeal rights. And unless Your Honors have any other questions, I have no further arguments. Thank you, counsel. Thank you both for your arguments today. Thank you for your bono representation. The case just argued will be submitted for decision, and we will proceed with argument in Frank v. Lizarraga. Thank you.
judges: Fernandez, Thomas, Ezra